23-3940, 23-3943, 23-3945, and 23-3946. Diane Owens et al. v. FirstEnergy Corp. et al. Argument not to exceed 15 minutes per side. And counsel, you may proceed for the appellant when ready. Good morning. Robert Schifra for FirstEnergy and the FirstEnergy defendants. I reserve four minutes for rebuttal time. Very well. This is a Rule 23-F appeal of a class certification decision in a securities case. This court should reverse and vacate the class certification order because the district court made two errors. The first, contrary to eight circuit courts of appeals, the district court held that plaintiffs could satisfy the reliance element of Section 10b of the Exchange Act by invoking the narrow, affiliated-ute presumption of reliance to plaintiffs' claims which are based on half-truth statements. In fact, the complaint alleges on 17 pages more than 46 half-truth statements. And all the circuit courts have so far ruled that such claims must be looked at under the basic v. Levinson presumption of reliance which has governed securities class actions for 40 years. The second error was that in applying the Supreme Court's decision in Comcast, the district court erred in conflating the Securities Act, that's the 1933 Act method of calculating damages, with the 1934 Exchange Act method of calculating damages and as a result did not engage in the required rigorous analysis of plaintiffs' expert reports in calculating damages on a class-wide basis, which is required to satisfy the predominance requirement under Rule 23b-4. Now, critically and importantly here, in a June 13 filing, which is Docket 71 in this court, plaintiffs, quote, do not oppose remand for further findings regarding the Exchange Act damages. And in fact, in the district court, they'd filed a motion to try to have the district court correct what I think all agree was an error in his decision. Now, again, the complaint here is 17 pages of half-truths, 46 separate half-truths. These are true but allegedly misleading statements, and they're statements like the company is committed to good governance, the company has integrity, the company was pursuing legislative and regulatory solutions relating to its nuclear issues, and that it was very pleased that Governor DeWine had signed a bill called HB 6. The plaintiffs at page 2 of their opposition agree that this is a case about what First Energy did or did not say to investors. It's about statements that the plaintiff's claim were literally true. Well, that's the classic definition of a half-truth, and those types of claims in terms of class certification should be looked at in terms of the Basic v. Levinson presumption of reliance. And in fact, more than 90 of them. Would you say, then, that the Basic presumption applies to all three sections, A, B, and C? In this case, yes, it does. Affiliated Ute, you can't have one of the errors that the district court made in this case was thinking that you could have a case based on both and that was error. The eight courts of appeals have all said it. In fact, the Supreme Court has said in Affiliated Ute itself and then in Basic, you're either a Basic case or you're an Affiliated Ute case. Okay, but if this is a Basic case, then even if you persuade us on your main point, what happens on remand? That is, as I understand Basic, the fraud on the market, it seems to me that if there's any efficient market, a company of your size is going to be in it. So even passing what happened below, whether you waived on it, what would happen on remand? Can they then simply make the case for Basic reliance and move on to the merits? Because the question before us is class certification. It's not merits. So to get a certification on remand, wouldn't they just apply Basic? What they'd have to do is, first of all, the case originally has been always looked at as an Affiliated Ute claim and their principal argument has been that First Energy did not disclose that it was engaged in a so-called political corruption scheme. It is true that the 10B language seems to fit the complaint almost exactly, doesn't it? No, it doesn't. It fits it in terms of Section 10B-5B, which deals with misstatements. It does not fit it in terms of 10B-5A and C, which is scheme liability. The scheme here is not one that was directed to investors like a manipulation scheme. It's an undisclosed corruption scheme. In fact, Chief Judge Marbley, in his decision, only applied Basic to the misstatement portion of the case, not the scheme portion of the case. So the scheme portion of the case, we believe, is not in the case. Because that was the overriding... If you look at the plaintiff's opposition in pages 10 to 11, they list a whole series of conduct that was engaged in by First Energy. So then if you go that way, what can the plaintiff do to get certification under Sub B, which we seem to say the language seems to fit? So from your point of view, what would they need to get class certification under B without the affiliated presumption and, you say, without the Basic presumption either? Well, they get the benefit of the Basic presumption with respect to claims based on statements. No question about that. And they get the benefit of the Basic presumption with respect to what we call the half-truth claims. So what they have to do is go back before the district court, move for class certification again. We have the ability to raise all the defenses we would have under Basic to that motion, including, for example, that many of the statements that are at issue in this case are not statements that would have had what is called price impact. And the Supreme Court in 2021 decided a case involving Goldman Sachs. And then after all the briefing and argument in this case, in the Goldman Sachs Second Circuit case, the Second Circuit decertified the class because of the fact that the statements were not statements that had price impact. The whole premise behind the Basic presumption is that the statement somehow impacted the stock price. And our position is that statements like, for example, a company has good corporate governance or acts with integrity are not statements that impact the stock price of a company. And there's no evidence in this case that those statements caused the stock price to increase, unlike in a case, for example, where a company says we're going to make $20 billion and then it makes no and the stock price goes up and then when it turns out it only made $5 billion, the stock price goes down. So this case has been infected from the outset by a belief that affiliated ute controlled it. That was at the motion to dismiss stage and at class certification. And the District Court thought and in fact conflated both of those presumptions and thought that they could be dealt with simultaneously and that's it. To have a price impact, just asking, you gave one example, but if the, hypothetically, if you take their statements as true, the price impact of propping up the stock, that is if people would have thought, well there might be a problem and they tell us there's no problem, would that still be a price impact? Because without, let's hypothesize, without the statements, the price would have fallen. You propped up the stock. Isn't that a price impact? Not in this case. There's absolutely no evidence that the stock price was ever propped up by anything. The statements the company made were very generic statements about, for example, you know, we're happy that the governor has signed this bill. But that's really a merits argument, isn't it? That is to say, if a jury or judge believed to the opposite, that is, that the company is going to go down the tank because we know how bad their nuclear plants are and they say, oh, we've got a solution. Again, if you believe all of that, isn't that a price impact in terms of doctrine? One would have to go statement by statement and assess whether there was a price impact. And that's something that was done in the Goldman Sachs case post the decision in Class Cert. In this case, it was not done in this case because reliance was presumed under affiliated use. All you have to show is that a statement would have been material. And the other side said, well, if you disclosed that you were engaged in political corruption, that would have been something investors would have wanted to know. It's important to keep in mind that political corruption does not equal securities fraud, which is the premise, I think, of my friend's argument on the other side. And so the securities acts are very technical. So I think, number one, this court should follow the eight other courts of appeals and hold that in the context of a case about misstatements, which is what this is, that basic has to be the governing presumption. In addition, the Supreme Court's made things a little bit easier in the Macquarie case from this term, 2024, where it held clearly that half-truths are a form of misstatement. They're not something else. And courts, in a good case, the site would be on why this is correct. In the Volkswagen emissions case from 2021, the Ninth Circuit, and that was a case where there was an undisclosed huge violation of the environmental laws. And the court said, well, but in that case, the plaintiffs had alleged a whole series of misstatements about environmental compliance. It was governed by the basic presumption and not the ute presumption. So that is the clear answer. Now, let me just raise this question of – the way I view this case is that, you know, there's a lot going on one might wonder about if this case is remanded. But for today, our problem is just really a pretty narrow one, which is trying to figure out if the district court's analysis in granting class certification was correct or incorrect. And if it was incorrect, then we send it back and let the district court worry about whether the class should still be certified using the proper analysis. Is that about it? That's correct. Okay. But I think one other point in terms of whether we have waived any arguments, every argument we've made are actually reflected in the district court's opinion. And the district court said affiliated ute applies in this case. The district court said that we can apply affiliated ute and basic. Those are arguments we're making. So nothing has been waived at all. It was all pressed below. I didn't suggest it. No, no, no. I just wanted to be clear. That was not intended to be my – I just had to – when I was considering this case, I had to kind of compartmentalize where we were going because it's pretty likely, perhaps, that a class will ultimately be appropriately certified. It may not be, but, you know, that's not today's. Exactly. The issue is we need to follow the correct standards in certifying the class, and we think that an error was made in the certification of a class, that the class certification order needs to be vacated. And, in addition, the whole issue of Comcast, which is this damages requirement that you have a methodology for doing damages on a class-wide basis, that was not properly done in this case at all, and everyone agrees. So the whole case needs to go back. We need to start again with class certification. We need to file a class certification motion. We need to make the arguments we can make under basic because those arguments were not made. And I take it you don't have any objection to a remand on the damages issue, but which would let it be discussed below again. No, no question. We fully support it. Everyone should have the ability to start at ground zero on class certification. Okay. Thank you. What is the ramification from the fact that the district courts seem to combine both affiliated UTE and basic presumption in its analysis? That actually infected this case from the beginning with error because under the affiliated UTE presumption, all a plaintiff has to show is that a statement was material. Under basic versus Levinson, there are guardrails that are in place. The efficiency of the market, whether the individual statements had price impact, the Supreme Court in 2021 in Goldman said the statements, there can't be a mismatch between the alleged false statement and then the corrective disclosure. There was no analysis done on any of those issues because this case has been viewed from the beginning as an affiliated UTE case and the district court thought you could have both affiliated UTE and basic in the same case. So we need to go back and have the correct legal standard applied and then go forward with class certification. We're not saying that the other side should not have the ability to make a class certification motion. We just want to be able to make all the arguments that we're entitled to make in opposition to that motion because again, the case was infected by this belief you could do both and eight courts of appeals have said you have either a basic case or an affiliated UTE case. In fact, an affiliated UTE itself, it was a half-truth case and the Supreme Court didn't apply affiliated UTE. It applied basic and came up with a new presumption. So there's a clear rule between a basic case and an affiliated UTE case and cases like this involving half-truth misstatements have been governed throughout the United States with the exception of a handful of cases, district court cases, by basic. Thank you very much. Good morning, Your Honors. My name is Jason Forge. I'm here on behalf of the plaintiffs and the class. I really appreciate this opportunity to address you and answer any questions you have. And to respond to First Energy's argument and the reply brief, Mr. Gifford actually began his argument with the plaintiffs  This is exactly where I think we should begin here. And if I may direct your attention to, if you have it handy, the first page of First Energy's reply brief and specifically the sentence at about the middle of the page, which states, echoing what Mr. Gifford began with today, most of the misstatements are what are known as half-truths, statements that are allegedly deceptive because they are misleadingly incomplete. That lone sentence does a lot of work here for us. And the concession that Mr. Gifford made at the outset of his argument does a lot of work for us here. Because when you take that sentence and you compare it to the arguments that First Energy made in their class cert opposition, it demonstrates that not only is this argument about half-truths a new argument, it is one that directly contradicts the argument that they made before the district judge. Before Chief Judge Marbley, First Energy assumed that of those two types of statements that are prohibited under 10b-5b, statements that are untrue being one type of statement, and statements that are literally true but misleading by omission being the other type. First Energy assumed, rightfully so, that the latter type of statement gives way to the affiliate ute presumption. And because of that assumption, which was accurate under this court's decision and Ruben v. Schottenstein, as well as the Bank Corp South decision, under that assumption First Energy had only one way out from the affiliated ute presumption. And that was to argue that the statements here are primarily untrue statements and not misleadingly incomplete statements. And that's exactly what they argued to Chief Judge Marbley. Now we see the exact opposite. Now we see First Energy arguing, which is completely different from what they argued in their opposition brief, that misleadingly incomplete statements are per se ineligible for the affiliated ute presumption. Now because they make that argument, they now acknowledge that the statements alleged here are predominantly truthful statements that are misleading by omission. And the reason why that concession is so important, number one, it's the waiver issue. It's clearly different than what they argued in their written opposition to class certification below. And as we know, waiver is an important principle for three reasons. First, it eases the burden on the appellate courts by forcing parties to raise their arguments before the district court. Second, it avoids surprises on appeal. And third, which is critically important here, is it prevents parties from avoiding the applicable standard of review that would apply had they raised the issue below. And that's where these issues kind of intersect. So just to clarify, your argument is that below they argued that their state, that you were complaining that the statements were, shall we say, pure lies, not just half-truths. They argued below they're predominantly pure lies, not half-truths. And I'll read to you. This is from ECF page 7196 of their opposition brief. Of these nine categories of misstatements, at least seven of them can be characterized as involving misrepresentations. And of those seven, five, the second, fourth, fifth, sixth, and ninth categories exclusively, slash primarily, involve only affirmative misrepresentations. This is not, as plaintiffs would have it, a primarily omission-based case. That is their written opposition to Chief Judge Marbley. I submit that is directly contradicted by their concession in their reply brief, directly contradicted by Mr. Jiffra's opening statement here this morning, and quite frankly directly contradicted by the complaint itself. Now... Yes, Judge. You don't concede that the district court's analytical process in applying affiliated ute was incorrect, do you? I do not concede that, Judge Gibbons. Do you deem waiver your better argument, since you led with it? Well, Judge Gibbons, that was actually, when we were formulating our answering brief, in fact, one of my colleagues said, shouldn't we lead with waiver here? And I have to admit, as a trial lawyer, I want to win the argument. I don't want to win on waiver. I want to win the argument. And so we began with the substantive argument regarding the proprietary... I did the opposite order here today, because I felt the reply brief just kind of locked that down and put in stark contrast... Yes, ma'am, I did. Now, in defense of Chief Judge Marbley's analysis, I want to be clear that there is a full-blown argument. We've made our case for BASIC below, and we made it extensively. Now, the reason why there's... and Judge Marbley held that BASIC absolutely applies here. The reason why there is not extensive analysis about it is because First Energy conceded it. So the Goldman Sachs decision, the Supreme Court Goldman Sachs decision, the decision that established this price impact argument, that was decided a year before the class certification decision. So there's no excuse for not raising that below. There's nothing more to be done with the BASIC presumption. That was raised by us, established by us. We showed it was an efficient market. It was not disputed, the market efficiency, and even the applicability of BASIC was not disputed. So turning to affiliated ute and now the substance of the argument, we have this concession that among the statements, they are primarily truthful but misleadingly incomplete statements. That is a straight shot to Ruben V. Schottenstein and the bank corps, In Re Bank Corp South from this court. Now granted, that is an unpublished decision, so it's not binding on this panel. But we have to look at this from the district court's perspective. As Judge Gibbons noted, this is a very narrow review in 23F here on class certification decision. And it's a very deferential standard. It's an abuse of discretion standard. And this court would have to determine that Chief Judge Marbley made a clear error. I have utmost respect for Judge Marbley. I was a district judge for a long time. He's a really good district judge. But we have an obligation to sort out the legal framework that's going to govern the class certification decision. That's just the way it is. And I don't run from that at all, but what I would submit to you is the combination of First Energy's concession and this court's decisions and Ruben V. Schottenstein and In Re Bank Corp South just confirms that Judge Marbley not only did not make a clear error of judgment, he decided and applied affiliated ute exactly how this court has told him to apply it. There's no doubt when you look at Ruben V. Schottenstein. We'll start there because that's an en banc decision from this court. I believe Judge Boggs wrote it. I confess I wrote it. It was a long time ago. Let me ask you, that didn't, I mean, that's to me, and I'm looking backwards, was very much a merits-focused decision, not a class certification decision, am I right? It was a merits-focused decision that concerned reliance. And let's recall that the primary allegation in the complaint, in the amended complaint in that case, was one that involved misleading the incomplete statements from the lawyer. In the plaintiff's affidavits, in the context of summary judgment, they also raised misrepresentation. I would say that the connection to this case is through reliance, not through the intricacies of 23F class certification, and in that case you had dealings among a small number of people. The dissenters, which included my colleague, focused on the fact that it would be stupid to rely on this lawyer. That was that kind of personal reliance, not all of these presumption reliance, which kind of takes us back to the question I asked the other side, which is, if we agree with them, how would you prove reliance here? Is it only through BASIC, because it's a fraud on the market? I mean, you can't get every investor who's down in Florida looking at the stock tables and looking at the nuclear business and deciding to invest. Is that fair, or how would you put it? That is fair, Judge Barg, but one of the ironies of us being here today is that we're here procedurally because this is a class action case, but none of these issues are raised because it is a class action case. Substantively, these arguments would be the exact same if we were talking about the 10 funds that own over 50% of the shares of First Energy. If those 10 funds were the only plaintiffs here, we'd be talking about the same exact issues, and I would submit that, of course, Judge Marbley in his decision said that both BASIC and affiliated you'd apply. And in Rubin, the reliance question is the exact same question as we have here. And as you, Judge Barg, and I was hoping this case could bring you and Judge Clay together because what separated you and Rubin was the status of the speaker, the speaker being an attorney. We don't have that issue here. There seemed to be agreement across the board in the en banc court that were it not an attorney speaking, that unquestionably under 10b-5b we would have truthful but misleading statements, and unquestionably that would mean the affiliated you'd presumption applies to satisfy the reliance element. And whatever ambiguity may have existed, and I would submit there was little to none about this application in a class certification setting, this court resolved in Inter-Array Bank Corp South where it stated that with respect to material omissions, affiliated you'd held that positive proof of reliance is not a prerequisite to recovery. The district court reasoned that Bank Corp South's incomplete and allegedly misleading voluntary disclosures imputed upon them a duty to fully disclose material facts. The obligation to disclose and this withholding of material fact established the requisite element of causation of fact. Although affiliated you'd has never been applied at the class certification stage, the district court did not abuse its broad discretion in doing so. Now that's from 2017. That's six years before Judge Marbley did the exact same thing. So I would submit to you, your honors, if it was not an abuse of discretion in 2017, it cannot possibly be an abuse of discretion for Judge Marbley to follow this court's direction not just from Rubin, but also from Inter-Array Bank Corp South in the year 2023. Otherwise it puts the district judges in an impossible position. If they can't rely on an en banc decision from this court on the very same issue, and then rely on a panel decision in the very same context, class certification, on the same issue, then they really have no guidance from this court. And that's just not the way this court has always applied the standard of review here. I want to bring things back now to what this case is really about. And it really is about a scheme. We've been talking about statements, but the case really is about a scheme. And the way to identify that is just imagine how this fraud would have played out without First Energy's conduct. There would have been no fraud. Now imagine how the scheme would have played out if they had had the conduct, but none of the statements. The scheme would have played out almost the same way. The statements certainly helped, but they were ancillary. We're not dealing with sociopaths here. These defendants were engaging in this fraudulent conduct for the very purpose of propping up and pumping up the share price. We have that explicitly stated by First Energy's CEO himself, who when one of the individuals that First Energy has admitted to bribing, Sam Randazzo, took care of what they were referring to as the Ohio hole, an impediment from a rate case that Mr. Jones had previously pointed out was weighing down First Energy's stock price. When Mr. Randazzo fixed the Ohio hole by eliminating the rate case, as First Energy had paid him to do, Mr. Jones sent Mr. Randazzo a screenshot of First Energy's share price going up with a message of thank you. And all of that was accomplished, Your Honors, without a single public statement. This is a scheme case at its core. It is secondarily a case involving statements, but at its core it is a scheme case. And that is why it is imperative that we follow Reuben, that we follow Affiliated Ute, and that we honor the directive given to the District Court by Bank Corp South by affirming Chief Judge Marbley's decision. To summarize that, if we agree with you where you say it's a scheme case, that would be A, I guess, then you would be entitled to the Affiliated Ute presumption, even if that's not exactly what Judge Marbley said in his opinion. Respectfully, I do think that's essentially what he said in his opinion. We have A and C liability, which are really two sides of the same coin. One's a scheme, the other is a fraudulent course of business. And Judge Marbley did recognize the scheme aspect of this case in his class certification order. So I think that is what he said in his decision. And if you look at Judge Marbley's decision denying motion to dismiss in this case, that's where the scheme really comes through loud and clear that it's primarily a scheme case. This is ECF 219 at ECF pages 4740 and 4741. He lays out in an entire paragraph that the scheme, as alleged, was to corrupt legislators and regulators in order to generate billions of dollars in illicit proceeds for the company while overcoming the company's most pressing operational challenges. First Energy allegedly pursued this scheme through a variety of means, including by initiating bankruptcy proceedings to try to evade liability for nuclear plants, paying lobbyists to orchestrate and execute the public corruption necessary to pass and preserve HB6, making personal payments to corrupt politicians, using those politicians and regulators to write and advance HB6, corruptly preventing a referendum, creating and using a web of pass-through entities to transfer and conceal the money to finance the scheme, and then last, this is the end of his entire description, lastly, making materially false and misleading public statements and concealing the scheme from the investing public. Thank you, Judge Clay. I will wrap up there with this notion that this often happens in cases that the closer call, in this case, might be the statements. The easier call is the scheme. So we wind up talking about the statements, but we lose the forest from the trees if we focus just on the statements here, because this is, in fact, a scheme case. Thank you, Your Honors. Thank you. We have rebuttal. Thank you. Let me address the waiver issue first. There's no waiver here. Chief Judge Marbley's opinion clearly reflects all the issues we've been talking about. At pages 41 and 42 of his opinion, he talked about how this case is about communications that paint an incomplete... 41 and 42 of the class certification order? Yes, sir. At 41 and 42, 9821 and 9822, he talks about how this case is about communications that paint an incomplete picture of the truth. He also says at 4769 that it's unsettled whether plaintiff can engage in basic and mute simultaneously. And we lay out in our reply brief that we raise these issues in our briefs. We raise them at argument. We submitted a 40-page slide presentation at the argument that makes all the arguments that we've made here. The arguments were pressed and passed on below. There's no waiver. Let me talk about the Rubin case for a second. I was surprised that that was cited in the opposition brief on the merits because it wasn't cited in the opposition brief to the Rule 23 petition. No court has ever cited the Rubin case for the proposition it's being cited for here. In fact, Rubin, as Judge Bodge correctly pointed out, was not a class action case. And the citation to affiliated ute in Rubin was a C also. And that was a case that was decided on the merits because there actually was reliance. No court has ever cited Rubin for the proposition that the other side has cited it for. Bank Corp South is a 23F petition where the court said we're not going to deal with this issue that other courts of appeals have dealt with and we're just going to let it go in this one case. But the court certainly never said that it was going to be taking the opposite position of eight other courts of appeals and said that you could apply affiliated ute and basic. Sorry, when you said we're just going to let it go, what did you mean by that? We weren't going to take the Rule 23F petition and deal with the merits of the issue. It was an unpublished 23F denial decision. It was not a decision where this court decided whether affiliated ute could apply to half-truths or whether you could have affiliated ute and basic in the same case. It's just a denial of a Rule 23F petition. I'm very glad that the other side talked about the scheme case because that's what this case has been about from the beginning and that's how it got off track. A scheme claim is not a legally cognizable claim in this case because a scheme requires some sort of market manipulation and some sort of conduct that impacts the stock price. A lot of what he talked about, and this is at pages 10 and 11 of the opposition brief, are things like hiring lobbyists, making contributions that were undisclosed. None of that was communicated to the market. This is a misstatement case and needs to be looked at as a misstatement case under basic and that's reflected by the fact that the plaintiffs themselves identify 46 separate misstatements. So what the plaintiff has done here is said, well, it's a political scheme case. That's not a securities fraud case. And they say, well, affiliated ute should apply. Even Chief Judge Marbley did not apply affiliated ute to the so-called scheme other than to the extent that, excuse me, did not apply the basic presumption to the scheme other than to the extent it dealt with misstatements. So to clear the brush here and get this case on the right track, what the court should say Would he apply it on remand? On remand he can apply basic, but he can't apply basic to the scheme claim because the scheme claim has all of this conduct that was not disclosed to the market. That's a merits argument in the sense of why he shouldn't apply it. But from a procedural point of view, if they want to argue their scheme argument, is there any reason they can't make that argument? You just have arguments to the contrary. We think you should say, as the Fifth Circuit did in the Regents case, that there is no cognizable scheme claim here. That's something that is relevant to class certification because the scheme is not one that impacted the price of the securities. It wasn't a scheme that would be something that would affect the market. That goes back to the price impact discussion we had a few minutes ago. Correct. But the point I'm making, Your Honor, is that the scheme claim that's being put forward here, the only way it was certified was under affiliated ute. And so our basic position is you can't have affiliated ute and basic in the same case. You can only have basic. So without the affiliated ute presumption, the scheme claim can't be certified as a class action claim. And it just doesn't work. So let me just for a second just reference what we think the Court should do here. On remand, the plaintiff should be able to move for class certification only under basic, not under affiliated ute. We don't think that they can bring their scheme claim because they only brought that in reliance upon affiliated ute. Well, we don't have to decide that point. I think the Court should say something, but only because I'm afraid that we'll get back down and we'll be re-arguing the same issues and then coming back up again. And I think it's quite clear that affiliated ute doesn't apply in this case. Eight courts of appeals that have said that in a case that's about misleading half-truths needs to be looked at under the basic presumption. And this so-called scheme that the other side is putting forward as if this political corruption equates to securities fraud, and it doesn't, is not something that is legally cognizable because it's not something that the scheme itself, to the extent any of it is cognizable, it relates to statements that were made that should be looked at as statements under 10b-5b-2. Not under, I mean, under 10b-5b, not under a and c. And so the problem here has been that the scheme claim has infected the rest of the case, but the only way they could seek certification of the scheme claim was under affiliated ute. We don't think they can do that. Why is that the only way? I thought we said basic applied to all three of the sections. Yes, but basic only applies if you have a case involving statements, and their scheme claim involves conduct that was undisclosed. So if you look at pages 10 and 11 of the opposition brief, they say First Energy hired lobbyists. That was undisclosed to the market. First Energy paid political contributions, but didn't follow, but did it secretly through. Your statement there was basic can only apply in a case that relies solely on misstatements? Basic can apply in a case where, it can apply in an a and c case if there's a stock price impact, but if the conduct is undisclosed. It takes us back to the argument about price impact.  In a case involving a and c, the so-called scheme claim, courts have traditionally found those claims in cases involving market manipulation. So the market manipulation is communicated to investors through the company's stock price. In the Stone Ridge case and other cases, the Supreme Court has held that when you have an undisclosed scheme, it's not a scheme that has been communicated to the market, and therefore is not cognizable. The plaintiff here has basically said, well, there's an undisclosed scheme here, all of this political corruption scheme that wasn't disclosed to investors, and therefore it's cognizable. And the only way they were able to get it certified was under affiliated ute, but that was because Chief Judge Marbley was applying both affiliated ute and basic in the same case. He said he thought it was unsettled at page 4767, note 33 of his motion to dismiss the decision, about whether you could engage in basic and ute simultaneously. Our position is that as eight courts of appeals have held, a case is either a basic case or a ute case, so once ute is put to the side, they have to rely on basic. And Chief Judge Marbley, in his class certification decision, even said he would only apply basic to the extent it involved misstatements. Well, then their misstatement claim is just the 10b-5 a and c claim is no different than their 10b-5 b claim, which is the misstatement claim. Have I maybe provided a little bit of clarity on this? You've been exhaustive, and your real life's been on a long, long time. Let me just, one last point. No, we're going to have to ask you. Thank you very much, and we urge the court to reverse and remand. Thank you. Thank you.